UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

[1] KEVIN BORGES-SÁNCHEZ AND
[2] WESLEY BORGES-SÁNCHEZ,

    Defendants.

CRIMINAL No. 21-147 (PAD)

**REPORT AND RECOMMENDATION**

### I.    Procedural posture

On April 28, 2021, defendants [1] Kevin Borges-Sánchez ("Kevin") and [2] Wesley Borges-Sánchez ("Wesley") were indicted for possession with intent to distribute cocaine, heroin, and marihuana, for being convicted felons in possession of firearms, and for possession of firearms and machineguns in furtherance of drug trafficking. ECF No. 1. Pending before the court are defendants' motions to suppress evidence seized and Wesley's request for suppression of post-arrest statements he made. ECF Nos. 63; 64. The United States has opposed both motions. ECF Nos. 68; 69. The facts, for purposes of the pending motions to suppress, are not in dispute. Therefore, a hearing is not necessary. In this report, I will take defendants' factual allegations as true.

### II.    Undisputed facts

On October 9, 2015, judgment was entered against Kevin for possession of a firearm in furtherance of a drug trafficking crime. *United States v. Kevin Borges Sánchez,* 14-709 (PAD), at ECF No. 59. Kevin began serving his five-year supervised release term on March 29, 2019, and

the same was set to expire on March 28, 2024. *Id.*, at ECF No. 60; 21-147 (PAD), at ECF No .63, at 5. The supervised release conditions provided, *inter alia*, that Kevin could not commit another federal, state or local crime, could not unlawfully possess a controlled substance, and could not possess a firearm, ammunition, destructive device, or any other dangerous weapon. 14-709 (PAD), at ECF No. 59, at 3. Among the conditions of supervision included in the judgment is the following:

> Defendant shall submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

*Id.* at 4, ¶5.

On February 29, 2016, judgment was entered against Wesley for possession of cocaine and cocaine base for distribution purposes and possession of firearms in furtherance of drug trafficking crimes. *U.S. v. [2] Wesley Borges-Sánchez*, 14-196 (JAG), at ECF No. 92.[1] Wesley began serving his supervised release term on April 24, 2019. *Id.*, at ECF No. 117. Among the conditions of supervised release detailed in the judgment is the following:

> The defendant shall submit to a search of his person, property, house, residence, vehicles, papers, computer, other electronic communication or data storage devices or media, and effects (as defined in Title 18, United States Code, Section 1030(e)(1)), to search at any time, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement (in the lawful discharge of the supervision functions of the probation officer) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. The probation officer may seize any electronic device which will be subject to further forensic investigation / analyses. The defendant shall warn any other residents or occupants that their premises may be subject to search pursuant to this condition. In consideration of the Supreme Court's ruling in *Riley v. California*, the court will order that any search of the

---

[1] The judgment was subsequently amended. ECF No. 95 in case 14-196 (JAG).

>     defendants [sic] phone by probation, while the defendant is on supervised release,
>     be performed only if there is reasonable articulable suspicion that a specific phone
>     owned or used by the defendant contains evidence of a crime or violation of
>     release conditions, was used in furtherance of a crime, or was specifically used
>     during the actual commission of a crime.

*Id.*, at ECF No. 95 at 4, ¶6.

Kevin and Wesley are brothers who, at the time of the events in question, lived together on the upper level of a two-story property at Honduras Street, Pompeya Ward in Loíza, Puerto Rico; their mother resided in the first level. *See* ECF No. 63, at 4, 9, 12. Kevin was supervised by U.S. Probation Officer Angélica Rodríguez Pérez (USPO Rodríguez), while Wesley was supervised by U.S. Probation Officer José Benítez Ramos (USPO Benítez). Prior to the search and seizure carried out on April 20, 2021, neither Kevin nor Wesley faced any motions filed by USPO notifying any violations to their supervised release terms.

Sometime before prior to March 26, 2021, USPO Rodríguez sent Deputy U.S. Marshal Gabriel Moreno a video recording which a person under supervision published in Instagram showing an individual discharging an automatic weapon. Although the person under supervision is not seen in the video recording, the video recording was published by a user whose name is keven_borges17, identified in his profile as Kevin Borges. USPO Rodríguez shared this information also with a supervisor.

On March 26, 2021, USPO Rodríguez emailed Supervisory U.S. Probation Officer Wendy Moreno Rodríguez (SUSPO Moreno) and Supervisory U.S. Probation Officer Orlando Rullán Orriols (SUSPO Rullán) advising them, among other matters, that: (1) Kevin was a target of the Federal Bureau of Investigations (FBI) for "possessing a firearm and being a hitman within a drug trafficking organization in the Loíza area"; (2) FBI Special Agent Carlos González stated that Kevin was deemed to be dangerous; (3) Kevin's two brothers were also under

investigation and under federal supervision; (4) Kevin was also deemed to be dangerous by, and a target of, the U.S. Marshal Service (USMS); (5) Kevin had been posting on Instagram pictures of firearms as well as short video recordings showing firearms being discharged; (6) it was unclear who the individual in the Instagram video recordings was; and that (7) the Instagram profile picture was that of Kevin's and that his name appeared on the page. USPO Rodríguez concluded the email message, which attached a video recording and a picture of Kevin's Instagram profile page, by stating: "Considering the former information, I am interested in potentially conducting a search and seizure operation. I believe he is a danger to the community. Should the same be feasible and approved, let me know. TY." ECF No. 63, at 5-6.

On April 6, 2021, USPO Rodríguez discussed with SUSPO Rullán the possibility of conducting a search and seizure with respect to Kevin. SUSPO Rullán told USPO Rodríguez to obtain a memorandum from the FBI detailing that Kevin was under investigation. In addition, USPO Rodríguez was instructed to send an email attaching a recent video recording from Kevin's Instagram page that depicted a Glock firearm and "extended full magazines". ECF No. 63, at 6. The next day, USPO Rodríguez forwarded to SUSPO Rullán and SUSPO Moreno a letter from the FBI dated April 7, 2021 confirming that the FBI was conducting an investigation in which Kevin was the target . ECF No. 63, at 6-7.

On April 8, 2021, SUSPO Rullán wrote the following email:

Good morning Senior Managers, please make reference to the attached videos and pictures that were posted on social media. In the same, you will see the discharging of an AK-47 automatic assault rifle, a gun with various high capacities magazines in a moving vehicle and pictures of the shadow of an individual posting with a gun. USPO Angélica Rodríguez was able to confirm that the post [sic] were made on the above named [person under supervision] Instagram account. Although we no [sic] means to confirm that the person appearing on the pictures and videos is Mr. Borges Sánchez, we can conclude that Mr. Borges Sánchez is implying that he is involved in new criminal conduct and that the posts are considered a threat to the safety of the community. In addition,

> the FBI submitted to our attention a memorandum confirming that Mr. Kevin Borges Sánchez is a target on an ongoing criminal investigation within the municipality [sic] of Loíza and Río Grande. Two municipalities that have been subject to shootings in relation to persons under our supervision.
>
> Based on the totality of the circumstances, the safety of the communities we serve, and taking into consideration the national operational manual and policies regarding search and seizure, we have been able to stablish [sic] reasonable suspicion to believe that Mr. Kevin Borges Sánchez may be involved in new criminal conduct. Therefore, we are requesting authorization to start the planning process and subsequent execution of a search and seizure operation for Mr. Kevin Borges Sánchez's person, residence, vehicle and cell phones. If approved, the FBI is willing to assist us. This case was staffed with SUSPO Carlo who agreed with this petition.

ECF No. 63 at 7, 8. Later that day, Deputy Chief U.S. Probation Officer Ray Rivera Navas approved the request to execute a search and seizure operation. ECF No. 63, at 8.

On April 20, 2021, the search and seizure intervention took place at Kevin's residence at Honduras Street, Pompeya Ward, Loíza, Puerto Rico. ECF No. 63, at 8-9. Kevin and Wesley were both present at the property. Various vehicles were searched too. As a result of the search and seizure that was conducted, the following items were found:[2] $6,137.00 in cash; 185 golden packages folded with what appeared to be heroin; 320 green packages folded with what appeared to be heroin; 118 plastic cylinders with what appeared to be marijuana; 74 vials with white substance that appeared to be cocaine; 1 ziploc bag with grey rocks that appeared to be heroin; 60 plastic bags with what appeared to be cocaine; 3 Glocks; 19 firearm magazines; 461 bullets; 5 cellphones; 2 scales; and 1 walkie talkie. ECF No. 63 at 11-12. As a result of the search and

---

[2] Some of the items were found in the residence, while others were found in some of the vehicles that were searched: (1) a Ford Ranger XL V6, white color, license plate number 524-201; (2) Ford Explorer XLS, gray color, license plate number EHK-253; (3) Toyota Camry, gold color, license plate number CXR-103; (4) Nissan Sentra GXE, grey color, license plate number IGS-159; and (5) Toyota Camry CE, gold color, license plate number EHK-253. ECF No. 63, at 10-11. The keys to the Ford Ranger, which Kevin said was bought for their landscaping business, were found on a table in the living room of the residence. ECF No. 63, at 13. The keys to the Ford explorer and a Toyota Camry were found in a dresser in Wesley's room. ECF No. 63, at 13.

5

seizure operation, Kevin and Wesley were arrested. Wesley made post-arrest statements. ECF No. 63 at 12.

### III.  Analysis

#### A. Whether the U.S. Probation Office had reasonable suspicion to conduct a search

"[A] warrantless search is *per se* unreasonable under the Fourth Amendment, unless one of 'a few specifically established and well-delineated exceptions' applies." *United States v. Wurie*, 728 F.3d 1, 3 (1st Cir. 2013) (citations omitted). One of those exceptions – not applicable to the case presently before the court – is the search incident to arrest. *Chimel v. California*, 395 U.S. 752 (1969). Another exception applies to those who a serving a supervised release term as part of their sentence, a situation which is not dissimilar for Fourth Amendment purposes to those who are sentenced to serve a term of probation. As stated by the Supreme Court of the United States:

> We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house. The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (individualized suspicion deals "with probabilities"). Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Those interests warrant a lesser than probable-cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.

*United States v. Knights*, 534 U.S. 112, 121 (2001).

The conditions of the supervised release terms for Kevin and Wesley both explicitly require USPO to have reasonable suspicion before conducting a search. Kevin's conditions of

release require "reasonable suspicion of contraband or evidence of a violation of a condition of release", while Wesley's require "reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release." Kevin and Wesley argue that USPO did not have reasonable suspicion to search their residence and the vehicles parked in said property. The United States disagrees.

"Reasonable suspicion is 'more than a hunch but less than probable cause.'" *United States v. McGill*, 8 F.4th 617, 623 (7th Cir. 2021) (quoting *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020). "It requires 'a particularized and objective basis' for suspecting that a person is breaking the law, … and it 'must be based on commonsense judgment and inferences about human behavior." *Id.* (citations omitted). The defendants contend that the facts or evidence amount to only a hunch. In none of the video recordings or photographs showing firearms can Kevin or Wesley be identified. It is also not clear where the video recordings or the photographs were taken or who made them. Moreover, taking Kevin's factual allegations as true, the house where Kevin and Wesley resided is not depicted in any of the video recordings. There are, however, other pieces to this puzzle.

Persons serving a term of supervised release are, for purposes of the analysis at hand, not unlike probationers. In the same way that probationers "have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal", *U.S. v. Knights*, 534 U.S. 112, 120 (2001), so it is as well with those who are serving a supervised release term. If those in the free community under supervised release get caught committing a crime, not only could they face new charges, but also potentially revocation of their supervised release terms. Furthermore, both Kevin and Wesley had been convicted of

possession of firearms in furtherance of drug trafficking crimes. Thus, firearms were not something they were unfamiliarized with.

The photographs and/or video recordings showing firearms and firearms being discharged were not found in some random website of the internet. They were seen by USPO Rodríguez and published in an Instagram account under the user keven_borges17, identified in his profile as Kevin Borges. In addition, the Instagram profile picture was that of Kevin's.

Now, being investigated by the FBI or the USMS in and of itself does not necessarily make a suspicion reasonable, but the fact that both agencies deemed Kevin to be dangerous and that he was a target of the FBI for "possessing a firearm and being a hitman within a drug trafficking organization in the Loíza area" is not inconsistent with the concerns raised by the content of Kevin's Instagram page or account. Even assuming *arguendo* that Kevin and Wesley do not appear with firearms in any of the video recordings or photographs of Kevin's Instagram account, those photographs and video recordings were sufficient for USPO Rodríguez to have reasonable suspicion that Kevin had access to firearms or constructive possession of firearms. *E.g.*, ECF No. 68, at 4, 5.[3] Moreover, the defendants have not argued that the video recordings and photographs are movie clips or screen shots of artistic works of fiction.

Finally, there was no legal impediment to search the vehicles parked at the residence, regardless of whether they belonged to, or were used by, Kevin or Wesley. Kevin's conditions of supervised release state in part that "Defendant shall submit his … vehicle … to a search conducted by a United States Probation Officer…. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition." Wesley's conditions of supervision are similar in this regard: "The defendant shall submit to a search of his … vehicles

---

[3] Among the special conditions of supervision in Kevin's judgment is the following: "The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons." 14-709 (PAD), ECF No. 59, at 4 ¶4.

… at any time, with or without a warrant, by the probation officer… The defendant shall warn any other residents or occupants that their premises may be subject to search pursuant to this condition." Simply because Kevin's residence or car cannot be identified in the photographs or video recordings does not make the suspicion unreasonable, as firearms can easily be stored in a home or vehicle. In this particular case, in view that the images and video recordings of firearms or firearms being discharged were seen by USPO Rodríguez in Kevin's Instagram account, it was reasonable for USPO to search Kevin's home and any vehicles parked in it.

Kevin argues that drugs were found in the living room, but not in his room. He also argues that a weapon was found in a vehicle that was not his. These arguments, however, put the cart in front of horse. The issue, for suppression purposes, is whether USPO had reasonable suspicion to conduct a search of Kevin's home and any vehicle parked in it. For the reasons previously stated, I conclude that USPO did have reasonable suspicion that Kevin was in violation of his supervised release terms. Where the contraband or firearms were found upon execution of the search goes to the merits of whether his supervision should be revoked or not and as to the merits of whether Kevin and Wesley are guilty or not of the charges in the indictment returned by a grand jury against them.

**B.  Whether it was necessary for U.S. Probation to obtain the defendant's consent**

Kevin argues that USPO and the law enforcement agents did not seek or obtain his consent to search his residence and the vehicles at issue. ECF No. 64, at 8. In making this argument, Kevin places emphasis on one particular sentence of his supervised release conditions: "Failure to submit to a search may be grounds for revocation of release." Since USPO or other law enforcement agencies did not seek Kevin's permission to search the residence and the

vehicles parked in it and Kevin never gave such authorization, the argument goes, USPO did not have the right to carry out the search. This argument, however, lacks merit.

The "failure to submit" provision is not a clause that exists to give the person under supervised release the option to refuse to a search. If such were the case, then every person under supervised release would always reject a warrantless search. The "failure to submit" clause is putting the defendant on notice that refusing to allow USPO to carry out a search based on reasonable suspicion of a violation to the terms and conditions of supervised release constitutes in and of itself a violation to the terms and conditions of supervised release.

The terms and conditions of Kevin's supervised release are clear:

> Defendant *shall* submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release.

*United States v. Kevin Borges Sánchez,* 14-709 (PAD), at ECF No. 59 at 4, ¶5 (emphasis added). Nowhere in Kevin's supervised release conditions does it state that USPO has to ask the person under supervision for his consent prior to conducting a search based on reasonable suspicion. "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Technologies, Inc. v. U.S.*, 579 U.S. 162, 171 (2016). When there is reasonable suspicion that an individual is violating the conditions of his supervised release, he has to submit his person, property, house, vehicle, papers, computers, and other electronic communication or data storage devices and media to USPO's search.

**C. Whether the assistance of other law enforcement agencies to the U.S. Probation Office renders the intervention invalid**

In his motion to suppress evidence, Wesley argues that

> Here the USPO took advantage of the search and seizure condition to assist the Marshals and FBI in their investigation. Why hadn't the Marshals or the FBI sought their own search warrant? Because they didn't have evidence to justify to the Court the issuance of a search warrant. It was easier to gain access and search the Borges household by activating the search and seizure condition of the SRT.

ECF No. 63, at 21.

First, the facts as stated by Wesley in his own motion to suppress evidence do not suggest that USPO was trying to help other law enforcement agencies to conduct those agencies' investigations, but rather the opposite, that is, that other law enforcement agencies were willing to assist USPO in its search and seizure intervention at the Borges household.

In an email dated April 8, 2021, SUSPO Rullán told his supervisors, in its pertinent part:

> [W]e are requesting authorization to start the planning process and subsequent execution of a search and seizure operation for Mr. Kevin Borges Sánchez's person, residence, vehicle and cell phones. If approved, *the FBI is willing to assist us*.

ECF No. 63 at 7, 8 (emphasis added).

Second, from the moment that Wesley began serving his supervised release term, he was well aware that it was unnecessary for USPO to obtain a warrant if there was reasonable suspicion of a violation to his conditions of release and that USPO could receive help from other law enforcement agencies while conducting a search:

> The defendant shall submit to a search of his person, property, house, residence, vehicles, papers, computer, other electronic communication or data storage devices or media, and effects (as defined in Title 18, United States Code, Section 1030(e)(1)), to search at any time, *with or without a warrant*, by the probation officer, and if necessary, *with the assistance of any other law enforcement* (in the lawful discharge of the supervision functions of the probation officer) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release.

*U.S. v. [2] Wesley Borges-Sánchez*, 14-196 (JAG), at ECF No. 95 at 4, ¶6. Wesley was put on notice that, regardless of whether a warrant had been issued, the assistance of other law

11

enforcement agencies could be a possibility in the event that USPO determined that it needed to conduct a search based on reasonable suspicion.

Third, the mere presence of other law enforcement agencies such as the FBI or the USMS does not invalidate USPO's search:

> Courts have uniformly held that probation and parole officers may not serve as "stalking horses" for the police by initiating searches solely for police purposes in order to help police circumvent the fourth amendment's warrant requirements. *See United States v. Cardona,* 903 F.2d 60, 65-66 (1st Cir. 1990); *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 98, 88 L.Ed.2d 78 (1985). The mere presence of police during a probation search, however, does not transform the search into a police search. *See United States v. Jeffers*, 573 F.2d 1074, 1075 (9th Cir. 1978) (per curiam). Nor is mutually beneficial cooperation between probation officers and other law enforcement officials precluded. *See United States v. Consuelo-González,* 521 F.2d 259, 267 (9th Cir. 1975) (en banc).

*United States v. Gianetta*, 909 F.2d 571, 581 (1st Cir. 1990).

### D.  Whether the First Amendment shields the defendants

Kevin argues that "[p]osting videos on Kevin's Instagram page, of weapons, or even discharging of weapons, is conduct that is protected under the First Amendment right of free speech." ECF No. 64, at 7. In other words, Kevin contends that he is being unlawfully penalized for simply exercising his right to express himself in his Instagram account. This argument, however, does not hold water. Nothing in the First Amendment prohibits USPO from taking into account the content of someone's speech to determine whether there is reasonable suspicion that a violation has been committed to the terms and conditions of supervised release.

### E.  Whether any statements made by a defendant should be suppressed

Wesley argues that his post-arrest statements should be suppressed under the fruit-of-the-poisonous tree doctrine. However, having concluded that there was reasonable suspicion for USPO to carry out the search of Kevin's residence (which was also Wesley's residence) and the

vehicles parked on its premises, there is no poisonous tree. Hence, the request to suppress Wesley's post-arrest statements should be denied.[4]

## IV. Conclusion

One last matter needs to be addressed. Wesley argues that "[a]though federal supervisees are similar to state parolees, the Supreme Court has long held that their status does not eviscerate a legitimate expectation of privacy, albeit diminished." ECF No. 63, at 16 (citing *Morrisey v. Brewer*, 408 U.S. 471, 482 (1972)). The United States Supreme Court, however, has held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson v. California*, 547 U.S. 843, 857 (2006). Yet, the conditions of supervised release for both Kevin and Wesley clearly required reasonable suspicion of unlawful conduct or a violation of the terms of supervised release in order for USPO to conduct a search. Thus, if USPO lacked reasonable suspicion to carry out the search of Kevin's home (which was also Wesley's home) and the vehicles parked on its premises, it would have been a search incongruous with the parameters delineated in their judgments. Whether such suspicionless search would have been a violation of the Fourth Amendment, however, is a different inquiry. It is unnecessary, nonetheless, to dig deeper into this hypothetical question, because I conclude that USPO did have reasonable suspicion that Kevin, a convicted felon under supervised release, had access to firearms or constructive possession of firearms and that therefore there was no Fourth Amendment violation when USPO searched his residence, where Wesley also lived, and any vehicles parked on its premises. Accordingly, it is respectfully recommended that the motions to suppress filed by Kevin and Wesley be DENIED.

---

[4] Wesley does not advance any other grounds on which to seek suppression of his post-arrest statements. Therefore, it is unnecessary to analyze whether his statements were voluntary, whether he was read his *Miranda* rights, whether he understood his rights, and whether he waived them.

The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); *see also* 28 U.S.C. § 636(b)(1); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir. 1994); *United States v. Valencia*, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED

In San Juan, Puerto Rico, this 14th day of April, 2023.

s/Marcos E. López  
U.S. Magistrate Judge